## JONES CANTRELL v. STATE.

No. A-2537.   Opinion Filed September 23, 1916.

(159 Pac. 1092.)

1.   **EVIDENCE—Reputation.** It is error prejudicial to the rights of the person on trial for the court to permit evidence of the general reputation of such person for the commission of the same or similar crimes to the one charged. The law is that the prisoner at the bar can be tried only for the crime charged against him, and not upon his reputation for having committed other crimes.

2.   **NEW TRIAL—Newly Discovered Evidence.** An application for a new trial upon the ground of newly discovered evidence is addressed to the sound discretion of the court, and when a motion of this kind is made, upon a showing that strong evidence of this character has been discovered, the court should grant a new trial. The law contemplates that this discretion should be exercised in the interests of fairness and justice. A failure to properly exercise the same will warrant this court in reversing the judgment and ordering a new trial.

*Appeal from the Superior Court of Muskogee County.*
*H. C. Thurman, Judge.*

Jones Cantrell was convicted of violating the prohibitory law, and appeals.   Reversed.

*Crump & Crump,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for defendant in error.

ARMSTRONG, J.   The plaintiff in error, Jones Cantrell, was convicted at the March, 1915, term of the Superior Court of Muskogee county on a charge of unlawfully conveying intoxicating liquor from one place in Muskogee county to another place therein, and his punishment fixed at a fine of Five Hundred Dollars and imprisonment in the county jail for a period of six months.

There are two assignments of error fatal to this judgment. The first is based upon the proposition that the court erroneously admitted testimony prejudicial to the rights of the plaintiff in

error in this: That he permitted the sheriff of Muskogee county, J. F. Ledbetter, to testify on behalf of the state that he knew the reputation of the plaintiff in error to be that of a bootlegger. It is a doctrine as old as free government that men who are placed upon trial charged with the violation of criminal statutes are to be tried for the offense alleged against them and are not to be tried upon a reputation for having committed similar or kindred offenses. The issue in a criminal case is single, and is always based upon the question, is the defendant at the bar guilty of the offense charged against him in the information? and not has he the reputation of being guilty of similar or other offenses against the laws of this country. In *Kirk et al. v. The State,* 11 Okla. Cr. 203, 145 Pac. 307, we say:

It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character.

Says Bishop:

'Bad character is never admissible in evidence against a defendant as ground for presuming guilt. This doctrine is absolute; thus, the evidence of stealing a horse cannot be reinforced by showing that the defendant is an associate of horse thieves.' (1 Bishop's New Cr. Proc. par 1112.)

And we hold, the fact that an offense has been committed cannot be proved by common rumor or general repute.

It appears that the jury were instructed, over the defendants' objection:

'That the testimony touching the general reputation of these defendants as to being bootleggers is to be considered by you only touching the credibility of these two defendants and for no other reason or purpose.'

The question presented is whether such evidence is competent and admissible to impeach the credibility of the defendants as witnesses.

In general, it may be said that a defendant, by availing himself of the statutory privilege of becoming a witness in his own behalf, has voluntarily changed his status from defendant to wit-

ness, and consequently may be cross-examined within the usual boundaries, and thus be discredited and impeached. *Buxton v. State,* ante, 143 Pac. 58.

Our statute provides (section 5046, Rev. Laws 1910) that a witness may be discredited by showing on cross-examination his conviction of a criminal offense.

In the case of *Hendrix v. State,* 4 Okla. Cr. 611, 113 Pac. 244, it is held that:

'For the purpose of affecting the credibility of a witness, he may be asked as to whether or not he has ever been convicted of a violation of the prohibitory liquor law of the state.'

In the absence of any further specific provision in our Code of Criminal Procedure, the common-law rule prevails (section 5543, Rev. Laws, 1910)__ and, when it is sought to impeach a witness by general reputation, the inquiry and the answer must be as to his general character or reputation for truth and veracity in the community in which he resides. In other words, where the purpose of testimony is to impeach a witness for want of veracity, the testimony, to be competent, must be confined to witness' general character or reputation for truth in the community in which he resides. To impeach him on this inquiry the testimony must show that his general reputation for truth is bad. *Knode v. Williamson,* 17 Wall. 586, 21 L. ED. 670.

If it were the law that everything which has a natural tendency to lead the mind towards a conclusion that a person charged with crime is guilty must be admitted in evidence against him on the trial of that charge, the argument for the state would doubtless be hard to answer; but the law is otherwise. It is the law that a defendant in a criminal case is presumed to be innocent until the contrary is proved by competent evidence beyond a reasonable doubt. Whether the law in this respect is wise or unwise, whether it accords with human reason and experience, whether it affords too great protection to the criminal, or too little to society, are not questions with which we have to do. It is not the province of the courts to change and relax the rules of evidence in order to facilitate convictions in a particular class of offenses. Until the lawmaking power intervenes and prescribes differently, the same rules of evidence must govern the trials of

defendants in this class of offenses that govern in all other criminal trials.

It follows that evidence of the general reputation of the defenadnts as to being bootleggers was incompetent to impeach the credibility of the defendants as witnesses, or for any other purpose. Its admission was therefore prejudicial to the substantial rights of the defendants."

The next proposition is based upon an assignment to the effect that the court erred in overruling the motion for a new trial, based upon the ground of newly discovered evidence. The motion for a new trial sets out that the plaintiff in error, after the trial, discovered witnesses, to-wit, G. W. Brown and B. F. Hembree, whose testimony he could not with reasonable diligence, have found before the trial. Witness Brown filed an affidavit in which he sets forth the facts concerning the charge, and says that a negro placed the grip of intoxicating liquor in the cab and told the driver to take the grip to the Frisco depot. That witness left town within a few days, and did not hear of the trial until after the plaintiff in error had been convicted, and upon hearing that he had been convicted, and upon learning the facts as set forth on behalf of the plaintiff in error to the effect that he got in the cab as it came up town from the M., O. & G. depot, that the grip was in the cab when he got in the same, and that he knew nothing about it. Witness recalled the facts and volunteered the information. Hembree filed an affidavit to the effect that he was on Main street the day plaintiff, in error was arrested in the cab; that plaintiff in error and one Addington was standing on the sidewalk talking when the cab came by and plaintiff in error got in same to go up town; that he never mentioned these facts to plaintiff in error until after his conviction. The plaintiff in error, as his defense, contends that he was on Main street when he got into the cab to drive up town; that the cabman was coming from the M., O. & G. depot. He was standing on Main street, and as the cabman came by, he asked him if he was going up town, and said if he was he would go with him. He got in the cab and was riding to town when the driver let the team run into a telephone pole, and broke some of the harness;

·that the sheriff, J. F. Ledbetter was standing on the corner, and walked out to the cab, saw the grip, examined it, and found it contained whisky, and arrested the plaintiff in error. That he knew nothing about the grip, didn't know whose it was, and didn't know what was in it, and had nothing to do with it. The plaintiff in error, at the time of his arrest, told the sheriff that he did not own the whisky, and had nothing to do with the same. The motion for a new trial should have been sustained on the ground of newly discovered evidence.

For the errors indicated, the judgment of the trial court is reversed, and the cause remanded for a new trial.

DOYLE, P. J., and BRETT, J., concur.