## WALTER WHITLOW v. STATE.

No. A-4267. Opinion Filed Sept. 10, 1923.
(218 Pac. 162.)

(Syllabus.)

1. Evidence—Character of Defendant—Issue to be First Raised by Defense. The state cannot attack the character of a defendant unless he first puts that in issue by introducing evidence of his good character.

2. Witnesses—Defendant as Witness in Own Behalf—Credibility at Issue as any Other Witness. When a defendant elects to testify in his own behalf, he occupies a double position. As a defendant his character cannot be attacked by the state; as a witness he puts his credibility at issue like any other witness.

3. Same—Cross-Examination. A defendant, by availing himself of the statutory privilege of becoming a witness in his own behalf, has voluntarily changed his status from defendant to witness, and consequently may be cross-examined within the usual boundaries, and thus be discredited and impeached.

4. Same—Testimony of General Reputation of Defendant as Bootlegger Incompetent. Where the purpose of testimony is to impeach a witness for want of truth and veracity, the inquiry and the answer must be as to his general character or reputation for truth and veracity in the community in which he resides, and testimony as to the general reputation of a defendant for being a bootlegger is incompetent to impeach the credibility of a defendant as a witness in his own behalf, or for any other purpose.

Appeal from County Court, Muskogee County; Enloe V. Vernor, Judge.

Walter Whitlow was convicted of a violation of the prohibitory liquor law, and he appeals. Reversed.

M. D. Hartsell, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J.  Plaintiff in error, Walter Whitlow, was convicted of a charge that he did unlawfully transport one-half gallon of whisky from a point unknown in Muskogee county to a point two blocks north and one block west of the Bank of Boynton, behind Wilson's barn, in the town of Boynton, and his punishment fixed at a fine of $200 and confinement in the county jail for a period of 90 days. To reverse the judgment, he appeals.

The assignments of error relate to rulings of the court on the admission of evidence, and the sufficiency of the evidence taken as a whole to sustain the verdict and judgment of conviction.

C. W. McGill testified:

"I have a special deputy sheriff's commission. I saw the defendant come out of Wilson's barn, and he started to hand a bottle to Ben Shipman. I was about a block away. I started towards them, and the defendant went into the barn. I searched them both to find the bottle. Then I took them back to the barn. I found a half gallon of whisky in the barn. When I first saw the defendant he was coming out of Wilson's house. Wilson is a colored man."

The state offered no further proof in chief.

For the defense Ben Shipman testified, in substance, that he met the defendant on his way to his shop, and was talking to him about some work the defendant was doing for him on a truck when the special officer came up and searched them; that he did not see any whisky, and that the defendant did not have a half gallon of whisky or any bottle of any kind upon

him,. that the special officer arrested the defendant, and took him into the barn, and witness left and saw nothing further.

As a witness in his own behalf the defendant testified:

"I have lived in Boynton about 18 years. I have a wife and five children. I left home about 8 o'clock that morning to go to the blacksmith shop where I work. The alley near Wilson's barn goes direct from my house to the shop. As I passed Wilson's barn I met Ben Shipman, and he asked me about some work I was doing for him on his truck. I told him the work was done. While we were talking there, about 10 feet from the barn, McGill came up, and said, 'Consider yourselves under arrest,' and told me to come with him. He went to the back door of the barn, but could not open it. Then we went around to the front door, and he found the whisky covered up in the corner of the barn. I did not have any whisky, and did not know anything about it, the first time I ever saw it was when Mr. McGill found it."

In rebuttal the state called three witnesses, who were by the court permitted, over the objection of the defendant, to testify as to the general reputation of both the defendant and defendant's witness, Ben Shipman, as being parties habitually inclined to drinking, and also as to the general reputation of the defendant as to being a bootlegger.

The question presented is whether such evidence is competent and admissible to impeach the credibility of the defendant as a witness.

The charge in this case is a violation of that subdivision of the enforcement act which provides that it shall be unlawful "to ship or in any way convey such liquor from one place within this state to another place therein, except the conveyance of a lawful purchase as herein authorized," and it was only necessary for the state to prove such unlawful conveyance. It was

not necessary to prove unlawful intent, and character was not an element of the offense, and did not tend to prove the issue to be tried. Proctor v. State, 8 Okla. Cr. 537, 129 Pac. 77.

It is a fundamental principle of criminal law that the character of the defendant cannot be impeached or attacked by the state, unless he puts his character in issue by introducing evidence of good character.

Says Bishop:

"Bad character is never admissible in evidence against a defendant as ground for presuming guilt. This doctrine is absolute; thus, the evidence of stealing a horse cannot be reinforced by showing that the defendant is an associate of horse thieves." 1 Bishop's New Cr. Proc. par. 1112.

And we hold the fact that an offense has been committed cannot be proved by common rumor or general repute.

In general, it may be said that a defendant, by availing himself of the statutory privilege of becoming a witness in his own behalf, has voluntarily changed his status from defendant to witness, and consequently may be cross-examined within the usual boundaries, and thus be discredited and impeached. Buxton v. State, 11 Okla. Cr. 85, 143 Pac. 58.

Our statute provides (section 585, Comp. Stats. 1921) that a witness may be discredited by showing on cross-examination his conviction of a criminal offense.

In the case of Hendrix v. State, 4 Okla. Cr. 611, 113 Pac. 244, it is held that:

"For the purpose of affecting the credibility of a witness, he may be asked as to whether or not he has ever been convicted of a violation of the prohibitory liquor law of the state."

In the absence of any further specific provision in our Code of Criminal Procedure, the common-law rule prevails (section 2345, Comp. Stats. 1921) ; and, when it is sought to impeach a witness by general reputation, the inquiry and the answer must be as to his general character or reputation for truth and veracity in the community in which he resides. In other words, where the purpose of testimony is to impeach a witness for want of veracity, the testimony, to be competent, must be confined to witness' general character or reputation for truth in the community in which he resides. To impeach him on this inquiry the testimony must show that his general reputation for truth is bad. Kirk et al. v. State, 11 Okla. Cr. 203, 145 Pac. 307.

In Cantrell v. State, 12 Okla. Cr. 534, 159 Pac. 1092, it is said:

"It is a doctrine as old as free government that men who are placed upon trial charged with the violation of criminal statutes are to be tried for the offense alleged against them, and are not to be tried upon a reputation for having committed similar or kindred offenses. The issue in a criminal case is single, and is always based upon the question, Is the defendant at the bar guilty of the offense charged against him in the information? and not, Has he the reputation of being guilty of similar or other offenses against the laws of this country?"

It follows that evidence of the general reputation of the defendant as to being a bootlegger was incompetent to impeach his credibility as a witness or for any other purpose. Its admission was therefore prejudicial to the substantial rights of the defendant. The judgment of the lower court is therefore reversed.

MATSON, P. J., and BESSEY, J., concur.