## MONROE CHATHAM v. STATE.

No. A-9360. Nov. 25, 1938.
(84 P. 2d 804.)

J. N. Fortner, of Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Howard Phillips, Co. Atty., of Idabel, for the State.

BAREFOOT, J.  The defendant was charged in the county court of McCurtain county with the crime of selling whisky to Irwin Bohanan, was tried, convicted, and sentenced to pay a fine of $50 and serve 30 days in the county jail.

For a reversal of this case it is urged.  First:  That the court erred in permitting the county attorney to ask leading and suggestive questions.  Second:  That the county attorney, over objection of defendant, was permitted to prove the general reputation of Newt Hancock, a material witness for defendant, as being that of "a notorious bootlegger."

We have examined the record and find that the county attorney asked the prosecuting witness and other witnesses leading questions.  It is insisted that this was necessary because of the fact that the witnesses were fullblood Indians, and at least one of them was somewhat an unwilling witness.  While it is improper for counsel to ask leading and suggestive questions, we do not think this error alone would be sufficient to reverse this case.

The second error is based upon the fact that the state was permitted to prove that the reputation of the

witness, Newt Hancock, was that of "a notorious boot-legger. The most notorious bootlegger in McCurtain county." The information in this case charged the defendant, Monroe Chatham, with selling whisky to Irwin Bohanan, on the 9th day of January, 1937. It seems that the prosecuting witness had been arrested by defendant for disturbing public worship at Smithville, McCurtain county, on the night of December 26, 1936, and that while being taken to jail he escaped and was on the scout until he was arrested, as shown by the record, on January 14, 1937. While on the witness stand, Irwin Bohanan, the prosecuting witness, testified that when he went to the Holiness Church and was arrested that it was after he had bought the whisky. His testimony was as follows:

"Q. As a matter of fact, Irwin, at that time, on the 9th day of January, you were scouting over in LeFlore county to keep these officers at Smithville from arresting you, weren't you? A. When I went to the Holiness, that was after I bought the whisky. Q. That was after you bought the whisky? A. Yes, sir."

This cannot be true, for the reason that it was on December 26, 1936, and he claimed that he purchased the whisky on the 9th day of January, 1937. He also testified that he told his cousin, Nicholas Bohanan, that defendant had caused him to be arrested and that he was going to fix him, and that he bought whisky from him. He later in his testimony said that he did not tell him that. The prosecuting witness was placed in jail on January 14th, 1937, charged with disturbing religious worship. He testified as follows:

"Q. Do you know whether or not they dismissed the case against you for disturbing religious worship? A. I didn't understand what you said. Q. You don't know whether the county attorney dismissed the case they had against you that they put you in jail for? A. Yes, sir. Q. He dismissed that and you were never tried? A. Yes, sir. Q. And you told him if he dismissed the case you would come here and testify against Monroe Chatham,

didn't you? A. Yes, sir. Q. And testify that Monroe Chatham sold you the pint of whisky? A. Yes, sir."

On re-direct examination he testified that he bought the whisky from the defendant before he went to the church and was arrested. This would have been on the 26th day of December, 1936. The charge in the information was January 9, 1937.

It will thus be seen there is quite a conflict in the testimony of the prosecuting witness as to what date he claimed the whisky was purchased from defendant. However, this was a matter for the jury to pass upon, and if this was the only error this case would not be reversed, but the record discloses that defendant offered in evidence to corroborate his testimony the evidence of one Newt Hancock. He testified he had been with defendant on the date prosecuting witness testified he had bought whisky from defendant in Westville. That they had gone to Idabel early in the morning and did not return until late in the afternoon. This was the night defendant was called to the religious meeting to arrest prosecuting witness for disturbing public worship. The state was permitted by the court to place three witnesses on the witness stand, and by each of them proved that Newt Hancock was "the most notorious bootlegger in that part of McCurtain county." The character of this witness was not impeached as to truth and veracity, but he was asked the question above indicated. The court has held many times that such evidence was inadmissible. Kirk v. State, 11 Okla. Cr. 203, 145 P. 307; Whitlow v. State, 24 Okla. Cr. 307, 218 P. 162; Cantrell v. State, 12 Okla. Cr. 534, 159 P. 1092; Sims v. State, 11 Okla. Cr. 382, 146 P. 914; Pickrell v. State, 5 Okla. Cr. 391, 116 P. 957; Munson v. State, 23 Okla. Cr. 64, 212 P. 438.

The impeachment of a witness is proper but it should be to his credibility, his reputation for truth and veracity rather than of his moral character. This is the general

rule and is supported by the great weight of authority. Welch v. State, 16 Okla. Cr. 513, 185 P. 119; Litchfield v. State, 8 Okla. Cr. 164, 126 P. 707, 45 L.R.A., N.S., 153; State v. Scott, 332 Mo. 255, 58 S. W. 2d 275, 90 A.L.R. 860; 70 C. J. 826; Tarling v. People, 69 Colo. 477, 194 P. 939. These cases generally refer to the evidence of the defendant himself, and it is universally held that where defendant is charged with a specific crime, such as a sale or illegal conveyance of liquor, it is not permissible to prove the reputation of defendant as being that of a bootlegger. This is also true where one is charged with the crime of unlawful possession of intoxicating liquor.

However, the general rule is announced that where a person is charged with the maintenance of a nuisance, it is permissible to prove that the place has the reputation of being a place where intoxicating liquor is sold. That is, if it is a place of public resort. This is so by reason of the nature of the crime. It is also held that where a defendant goes upon the witness stand and puts his character in issue, that he may be asked on cross-examination as to specific charges against him. But in the case at bar the question of defendant's character, or that of his witness, was not put in issue. The state was permitted, over objection of defendant, to prove on redirect examination that the reputation of the witness, Newt Hancock, was that of being the "most notorious bootlegger in that part of McCurtain county." It would have been perfectly admissible for the state to have proved witness' reputation for truth and veracity was bad, but not evidence of his general reputation. As was said in the case of Tarling v. People, 69 Colo. 477, 194 P. 939:

"While the authorities are not in entire accord upon the question, the better rule seems to be that in impeaching a witness the inquiry ought to be as to his credibility, his reputation for truth and veracity, rather than as to

his moral character. The great weight of authority supports this rule. * * *

"This involves the necessity for sanctioning the drawing of an inference from an inference. A witness having been shown to be dishonest or immoral, it is inferred from that trait of character that he is untruthful; then upon the inference that he is untruthful generally it may be inferred that he is untruthful in the testimony which he has given. This violates the rule that an inference shall not be based upon an inference. It follows, therefore, that the impeachment should go to his general character or reputation for veracity." Kirk v. State, 11 Okla. Cr. 203, 145 P. 307.

The evidence revealed that defendant associated with the witness Newt Hancock, and that they were friends. Under these circumstances it can not be doubted that the proof of his reputation as a "notorious bootlegger" of McCurtain county would have a tendency to prejudice the jury against defendant, and no doubt was a strong factor in causing them to convict him.

We do not think that under the authorities above cited, that such evidence was admissible in this case, and for that reason the judgment of the county court of McCurtain county is reversed.

DAVENPORT, P. J., and DOYLE, J., concur.