## JOHNNIE WILLIAMS v. STATE.

No. A-9556.   Jan. 25, 1940.
(98 P. 2d 937.)

Eaton & Wheeler, of Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty Gen., and L. A. Wallace, Co. Atty., of Okmulgee, for the State.

BAREFOOT, J. Defendant was charged with the crime of rape in Okmulgee county; was tried, convicted and sentenced to serve a term of 60 years in the penitentiary, and has appealed.

This is the second conviction of this defendant upon this charge. His prior conviction was reversed by this court. Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530. The facts were stated fully in that opinion, and it is unnecessary to repeat them here. It will be noted that the former case was reversed because the evidence was insufficient to sustain a conviction. The evidence introduced in this trial was substantially the same as that introduced in the former trial with two exceptions which will hereafter be noted.

The witness Tom Berry, a deputy sheriff, was permitted to testify that immediately after the arrest of the defendant some four days after the crime had been committed, he went to the home of the mother-in-law of defendant, which was also the home of defendant, for the purpose of searching the premises; that he did not procure a search warrant, but that while on the premises he observed a tan shirt and a pair of blue bib overalls on a clothes line. That they had been recently washed. There had been testimony by those who identified the defendant that he was wearing clothes of this description at the time they saw him. Some of the witnesses testified that he was wearing a grey shirt.

The additional evidence was that of Joanna Burkhalter, and an attempt to offer the evidence of Bessie Shamley, which was finally excluded by the court. The court first excused the jury and heard the evidence of these witnesses in the absence of the jury. After hearing the evidence, the court decided to exclude the evidence of the witness Bessie Shamley, but permitted the evidence of the witness Joanna Burkhalter to go to the jury. Before the jury was excused, the witness Bessie Shamley was placed upon the stand and in the presence of the jury was asked: "Q. What is your age? A. Was I raped?"

A few preliminary questions were asked and at the request of counsel for defendant, the jury was then excused and the court heard the evidence in their absence. After the court had decided that the evidence of Bessie Shamley could not be introduced, the county attorney was permited, after the witness Joanna Burkhalter had testified, to place the witness Bessie Shamley upon the witness stand in the presence of the jury, as he stated, for the purpose of making a record and she was asked:

"Q. Are you the same Bessie Shamley that testified in this case yesterday afternoon? A. Yes, sir. Q. In the presence of the court, but in the absence of the jury? A. Yes, sir, I am. Q. And you are ready and willing to testify to the jury now as you did yesterday afternoon? A. Yes, sir, Mr. Eaton: We object to that, as to whether she is ready and willing to testify. Mr. Wallace: Now, if the court please, we tender the testimony of this witness, as given in the presence of the court, and in the absence of the jury, yesterday. The Court: The objection to the offer and tender will be sustained for the reasons stated, as inadmissible because of its remoteness. Mr. Wallace: Exception. That is all, the witness may be excused."

Without going into a discussion of the evidence of these two witnesses, one of which was admitted to the jury, it may be said that they testified to defendant having

raped Bessie Shamley, and attempted to rape Joanna Burkhalter. The rape of Bessie Shamley having occurred in May, 1935, and the attempt to rape of Joanna Burkhalter in November, 1935. The defendant in this case was charged with the rape of the prosecuting witness, Leota Smith, on the 15th day of June, 1936. The court refused to admit the evidence of the witness Bessie Shamley because of its remoteness, but admitted the evidence of Joanna Burkhalter.

From a reading of the record and the evidence given by the witness Bessie Shamley before the court, one might assume that this evidence was not only excluded by reason of its remoteness, but also by reason of its unreasonableness. It is not only unreasonable, but practically impossible for the defendant to have done the things testified to by this witness.

While the record does not disclose, and this case has not been briefed by the state, it may be presumed that the evidence of the witness Joanna Burkhalter was permitted to be introduced on the ground that there are well-founded exceptions to the general rule, that evidence of other crimes may not be admitted, and that based upon the fact that the evidence is so connected that it will throw light upon the guilt of defendant, or that it was committed as a part of the same transaction, and is a part of the res gestae, or proves a scheme or intent on the part of the defendant, or to prove guilty knowledge. Also that the general rule does not apply to cases involving illicit sexual relations. Pruett v. State, 35 Okla. Cr. 359, 250 P. 1029. This is where the act was between the same and not different parties, and at different times. See, also, Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Ellsworth v. State, 10 Okla. Cr. 452, 137 P. 1188, 1189; Koontz v. State, 10 Okla. Cr. 553, 139

P. 842, Ann. Cas. 1916A, 689; State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Reniff v. State, 53 Okla. Cr. 448, 13 P. 2d 592; Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779.

The general rule, which is universally followed by the courts of this country, is that evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. To this general rule there are several well-defined exceptions, but by the recognition of these exceptions the courts should not permit the annihilation of the general rule. The general rule is founded in reason. A defendant, when placed upon trial for the commission of an offense, comes prepared only to meet the offense of which he stands charged, and he cannot in the nature of things be prepared to defend against other charges of crimes, which are independent and have no connection with the crime of which he stands charged. Moreover, it is not the policy of the law to convict a man of one crime by showing that he is guilty of another. Nor is it the law to permit the state to attack the character of the defendant unless he first puts it in issue by offering evidence of his good character.

The recognized exceptions to this general rule are:

(1) Evidence of other offenses similar to that charged is relevant and admissible, when it tends to prove some element of the one charged, as when it shows or tends to show guilty knowledge or intent in the commission of the offense charged.

(2) Evidence that tends directly to prove the defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct offense.

(3)   Evidence of a different offense from the one charged is admissible when both offenses are so closely linked or connected as to form a part of the res gestae.

Evidence of other offenses is competent to prove the specific offense charged when it tends to establish a systematic scheme or plan embracing the commission of two or more offenses so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the offense charged.

These exceptions are founded on as much wisdom and justice as the rule itself. This court has often recognized the exceptions to the general rule. The case of Boyer v. State, supra, fully discusses the exceptions to the general rule, and recognizes when they are applied. State v. Rule, 11 Okla. Cr. 237, 144 P. 807; Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689; Reniff v. State, 53 Okla. Cr. 448, 13 P. 2d 592; Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383; Carter v. State, 35 Okla. Cr. 421, 250 P. 807.

The case of State v. Lapage, 57 N. H. 245, 24 Am. Rep. 69, is one of the leading cases which discusses this general principle, and the facts in that case are almost identical with the facts in the case at bar. In this case the court said:

"To make one criminal act evidence of another, a connection between them must have existed in the mind of the actor, linking them together for some purpose he intended to accomplish; or, it must be necessary to identify the person of the actor by a connection which shows that he who committed the one must have done the other. Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offences instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury. The most guilty criminal may be innocent of other offenses charged against him, of which,

if fairly tried, he might acquit himself. From the nature and prejudical character of such evidence it is obvious it should not be received, unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner. * * *

"But however extreme the case may be, I think it will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved other than the tendency to commit one crime as manifested by the tendency to commit the other.

"In the case under consideration, I cannot see any such logical connection, between the commission of the rape upon Julienne Rousse and the murder of Josephine Langmaid, as the law requires. I am unable to see any connection by which from the first crime can be inferred that the respondent was attempting the commission of a rape when he committed the murder, if he did it, other than such inference as I understand the law expressly to exclude. Proof of the first crime would show that the respondent was a very bad man—would perhaps show a tendency or disposition to commit that particular crime; but it would go no further, and in fact would amount to little more than an attack upon the respondent's character, which is inadmissible unless he puts it in issue, and an attack upon his character by showing particular acts, which is also inadmissible. * * *

"I mention this case to illustrate the necessity of extreme caution not to admit such testimony unless there can be seen some distinct logical connection, such as the law requires, between the fact proposed to be proved and the fact in issue. * * *

"The matter really reduces itself to attacking the prisoner's character by the proof of particular acts, which the authorities clearly show to be inadmissible. * * *

"What, then, is the question presented by this exception? Clearly, no other than this: was evidence that the prisoner committed rape upon Julienne Rousse, in Can-

ada, in 1871, legally admissible to show that he committed or attempted to commit rape upon Josie A. Langmaid, at Pembroke, in 1875? There was no question as to the defendant's physical strength and ability to commit the crime of rape. By no refinement, therefore, can State v. Knapp, 45 N. H. 148, be said to apply. There is no room nor occasion to argue that the actual perpetration of rape upon one woman tends to show physical strength sufficient to commit the same upon another. No such connecting link is in the case. The simple naked question is that just stated, namely, Can evidence that he committed rape upon one woman be received as evidence from which the jury may find that he committed rape upon another?—the two events being entirely independent and distinct,—no way connected in time, or place, or circumstances; and we cannot, in my judgment, suffer that question to be changed in form, or to be covered up and disguised by vague and general observations as to the matter or intent, however astute and plausible, without imminent danger of losing our way in a wilderness of fallacy and error. The answer to that question is to be sought for in the recognized authorities of the common law; and I must say, that if there is any break in those authorities, any want of unanimity in the answer which they give, I have failed to discover it. Doubtless some of these cases to which we have been referred run pretty near the line. But no court has yet said, to my knowledge, that the commission of one crime is legal evidence of the commission of another, when there is no connection of time, or place, or circumstance, or intent between the two, except that the commission of the first tends to show a heart capable of committing the second. * * *

"Suppose the general character of one charged with crime is infamous and degraded to the last degree; that his life has been nothing but a succession of crimes of the most atrocious and revolting sort: does not the knowledge of all this inevitably carry the mind in the direction of a conclusion that he has added the particular crime for which he is being tried to the list of those that have gone before? Why, then, should not the prosecutor be permitted

to show facts which tend so naturally to produce a conviction of his guilt? The answer to all these questions is plain and decisive: The law is otherwise. It is the law, that the prisoner shall be presumed innocent until his guilt is proved: it is the law, that his bad character shall not be shown by the State until he has put that matter in issue by attempting to show good character for himself: it is the law, that the credit of a witness shall not be impeached by showing specific instances of .falsehood against him: and it is the law, that evidence of the commission of one crime shall not be received to show the commission of another when there is no connection between the two. * * *

"In this case there was no connection whatsoever between the rape of Julienne Rousse in 1871 in Canada, and the murder of Josie Langmaid in New Hampshire in 1875. There can be no pretence that they are continuous parts of one transaction; that when the rape was committed upon Julienne Rousse, in 1871, the prisoner had any design to commit a rape upon or to murder Josie Langmaid, or any other woman, in 1875. The two acts are so wholly distinct and separate, that when the prisoner formed the design of committing a rape upon Julienne Rousse, and carried that design into effect in 1871, he did not and could not, as a part of that evil design and act, or as a consequence thereof, have then premeditated the murder of Josie Langmaid, or the perpetration of rape upon her.

"No point is better settled than that the State cannot give evidence of the bad character of the respondent, unless he shall first put his character in question by introducing evidence in support thereof."

We have quoted freely from the above case for the reason that the facts are very similar to those in the case at bar, and the reasoning and argument, to our mind, is unanswerable. We shall be content to cite some of the leading cases, and call attention to the fact that our own court has passed directly upon this point in the case of Brockman v. State, 60 Okla. Cr. 75, 61 P. 2d 273, 276, in an opinion by Judge Doyle. In that case the facts were very

similar to the facts here, except that the other offenses were committed immediately prior to the commission of the offense charged, and in the instant case the prior offense was seven months before the crime charged. In that case the court said:

"However, we do not think that the admission of the evidence in question to the defendant's prejudice was, by any means, cured by giving the aforesaid instruction. Such evidence gives opportunity for the conviction of an accused person upon mere prejudice instead of by evidence showing the actual commission of the crime for which a defendant is on trial. It compels a defendant to meet separate and distinct charges of crime, which he might successfully refute if given the opportunity to do so, unembarrassed by other issues."

In the case of Boyd v. United States, 142 U. S. 450, 12 S. Ct. 292, 295, 35 L. Ed. 1077, the court says:

"Whether Standley robbed Brinson and Mode, and whether he and Boyd robbed Hall, were matters wholly apart from the inquiry as to the murder of Dansby. They were collateral to the issue to be tried. No notice was given by the indictment of the purpose of the government to introduce proof of them. They afforded no legal presumption or inference as to the particular crime charged. Those robberies may have been committed by the defendants in March, and yet they may have been innocent of the murder of Dansby in April. Proof of them only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death. Upon a careful scrutiny of the record we are constrained to hold that, in, at least the particulars to which we have adverted, those rules were not observed at the trial below. However depraved in character, and however full of crime their past lives may have been, the defen-

dants were entitled to be tried upon competent evidence, and only for the offense charged." 16 C. J., Sec. 1132, page 586; Wharton's American Criminal Law, page 463; People v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193 (See note for citation of cases); 20 Amer. Jur., page 287, sec. 309, gives the general rule, and all of the cases from the United States Supreme Court and the state courts are cited. Also the exceptions to the general rule, and the authorities supporting the same.

As above stated, the former reversal of this case was on the ground that the evidence was insufficient to support the judgment and sentence. With the exception of the evidence heretofore reviewed, and which, under the law, was clearly inadmissible, the evidence is the same as in the former trial. As stated in the former opinion, there is such a conflict in the evidence and the testimony of many of the state's witnesses so corroborated the testimony of the defendant, and the disinterested witnesses offered in his behalf, as to his whereabouts, at the time this crime was committed. The evidence makes it absolutely impossible for him to have been at the scene of the crime at the time it was being perpetrated, and the evidence of the prosecuting witness and others being based on an identification of defendant made ten days after he was arrested and brought before them by the officers, and in clear conflict with the evidence of not only the witnesses of defendant, but clearly in conflict with the evidence of several witnesses for the state, we are at a loss to know how a verdict of guilty could have been had against this defendant, except by the introduction of the evidence of Joanna Burkhalter, and the attempt to offer the evidence of Bessie Shamley, after the trial court had held that her evidence was inadmissible. In the former case the defendant was assessed a punishment of 50 years in the penitentiary. In this case the punishment was left to the court and he assessed the punishment at 60 years in the penitentiary.

For the errors indicated, we are without doubt as to the propriety and necessity of reversing the judgment, and we are of the opinion that the evidence is not sufficient to support the verdict and judgment. The judgment is therefore reversed and the cause remanded to the district court of Okmulgee county, with direction to dismiss.

It appears from the record that the defendant was unable to give bond pending the determination of his appeal, and was committed to the penitentiary. It is therefore ordered, that the Clerk of this court forthwith forward to Jess F. Dunn, warden of the penitentiary at McAlester, a duly certified copy of this opinion, and upon receipt of the same, said warden is directed to discharge said defendant.

DOYLE, P. J. and JONES, J., concur.