## JOHN PITMAN et al. v. STATE.

No. A-5180.    Opinion Filed Jan. 9, 1926.
(242 Pac. 288.)

1.

M. D. Hartsell, for plaintiffs in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J. From a conviction in the county court of Muskogee county, the plaintiffs in error, hereinafter called defendants, have appealed.

Briefly stated the evidence shows the following state of facts: That on the date charged certain officers, after waiting throughout the night, about daylight, discovered the defendants in the woods about 9 miles from Haskell. Upon being approached the defendant Pitman ran and made his escape. The defendant Osborne was apprehended. He had at the time a 5-gallon jug of whisky, which he had just set down. At the request of the officers, he conducted them to a still about 150 yards away, which was in operation with whisky dripping from the worm into a half gallon fruit jar. They were informed against for having pos-

session of whisky with intent to violate the prohibitory law.

Various assignments of error are presented, which will be considered in the order presented:

It is first argued that the court erred in permitting certain jurors to sit in the trial for the reason they had served longer than two weeks in violation of the provisions of section 3517, Comp. St. 1921, citing Stuard v. State, 6 Okla. Cr. 94, 116 P. 204. But, since the record affirmatively shows that the defendants did not exhaust their peremptory challenges, the contention is untenable.

It is next argued that the court erred in permitting a witness for the state to testify that the defendant Osborne was a bootlegger, citing Wilkerson v. State, 9 Okla. Cr. 662, 132 P. 1120; Whitlow v. State, 24 Okla. Cr. 307, 218 P. 162; Kirk v. State, 11 Okla. Cr. 203, 145 P. 307.

The instant case, however, differs from the cases cited in the following particular: In those cases the defendant had not put his character in issue here before the evidence complained of was introduced. The defendant Osborne had put in issue his character and this evidence was in rebuttal. The questions propounded were proper and directed to the general reputation of the defendant. To the question, "What is that reputation?" the answer was, "He is a bootlegger." Technically the answer was not responsive, but it amounts to no more than testimony of the witness that the defendant had the reputation of being a bootlegger and is not such prejudicial error as would require a reversal.

It is next argued that the court committed error in permitting the state's attorney to ask one of the

officers if he had information with reference to a still before going to the place where the arrest was made. The question did not call for the statements made, but merely if they had such information. On objection, the court admonished the jury to disregard the question. The question called for an immaterial matter. The fact that the officers were there and that defendant had possession of the whisky at the time was material. We do not see, however, how the mere questioning of the witness if they were there because of information received would be in any wise prejudicial to the defendants. The questions asked did not bring the case within the rule that, where a prosecuting officer persists in intimating to the jury by his questions prejudicial matters, which are incompetent and such as might influence the jury, this constitutes reversible error. Pickrell v. State, 5 Okla. Cr. 391, 116 P. 957; Selfridge v. State, 27 Okla. Cr. 22, 224 Pac. 742.

It is argued further that the court erred in refusing defendants' requested instruction No. 1. This request is a definition of "reasonable doubt," following substantially the language of Abbott v. Territory, 20 Okla. 119, 94 P. 179, 16 L. R. A. (N. S.) 260, 119 Am. St. Rep. 818. This court has several times held that it is not erroneous to fail to define the term "reasonable doubt" in the absence of a request so to do. Nelson v. State, 5 Okla. Cr. 368, 114 P. 1124; Thompson v. State, 26 Okla. Cr. 121, 222 P. 568.

No case has been called to our attention where it is held to be erroneous to fail to define the term "reasonable doubt" when the defendant requested such definition. The term "reasonable doubt" has become firmly embodied in legal phraseology. Its use has become so common in criminal procedure that it is fairly well understood by the layman; and, while it has been

defined, it is to be doubted if the definition adds anything to the understanding of the term itself. The term "reasonable doubt" requires no definition and it is not erroneous to fail to define it, either with or without a request to do so.

The next assignment is directed to the refusal of the court to give defendants' requested instruction No. 3. This instruction informs the jury, in substance, that it is necessary that they find from the evidence beyond a reasonable doubt both the possession of the whisky as charged and the intent to sell, and, in the event they have a reasonable doubt of the existence of either of such elements, they should resolve such doubt in favor of the defendants and acquit. The substance of this request is fully covered by the general charge of the court and to have given the requested instruction would have been a mere repetition.

It is then urged that the county attorney made improper remarks in his argument to the jury. We have examined with care the statements set out as erroneous. None of them appear to be necessarily prejudicial. The court sustained objections in some two or three instances and admonished the jury not to regard them and cautioned the attorney to keep within the record. They present nothing requiring a reversal.

Lastly, it is argued that the evidence as to the defendant Pitman is insufficient. We do not so read the record. The witness Whittaker testified that he knew both defendants; that they were together at the time he arrested defendant Osborne with the five-gallon jug of whisky, and that defendant Pitman ran; that he then took Pitman's horse and buggy, went to his house; that Pitman was not there, but came in in a few minutes with his shoes and pants legs muddy, and was warm like he had been running.

The witness Blanchard testified that, at the time defendant Osborne was arrested with the whisky, Pitman was about 30 feet back of him; each had a horse and buggy, and Pitman ran and made his escape; that witness went later ·to Pitman's house; Pitman came in, and his clothes had mud and water on them; that he acted like he had been running, and was out of wind, and admitted the horse and buggy taken was his. Witness Brown testifies to substantially the same thing. The jury were fully warranted in finding the defendant Pitman guilty.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.