Anthony David **MARTINEZ**, Appellee,

v.

John W. **TURNER,** Warden, Utah State
Prison, Appellant.

No. 582–70.

United States Court of Appeals,
Tenth Circuit.

June 8, 1972.

A. Daniel Rooney, Aurora, Colo., for
appellee.

Lauren N. Beasley, Chief Asst. Atty.
Gen. of Utah (Vernon B. Romney, Atty.
Gen. of Utah, on brief), for appellant.

Before PHILLIPS, HILL and HOL-
LOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal is taken from a judgment
granting appellee Martinez a writ of ha-
beas corpus. The trial court held a
Utah robbery conviction null and void

and ordered Martinez released. The judgment rested on conclusions that introduction in evidence of identification of Martinez at an improper line-up and introduction of a coat unlawfully seized violated appellee's Federal constitutional rights under the Fourth and Fourteenth Amendments, among other things.[1] Appellant challenges both of these holdings and the provision of the order for immediate release.

Martinez was convicted in November, 1967, of robbery. The conviction was appealed to the Supreme Court of Utah on the issues before us and others, and the conviction was affirmed. State v. Martinez, 23 Utah 2d 62, 457 P.2d 613. The Court held that the photograph of the line-up did not reveal the prejudice alleged. With respect to the coat, the Court held that the Utah trial court could reasonably have concluded that Martinez consented to its being taken; that it was in plain view; and that even if its admission was error, it was harmless. On the basis of these conclusions the Utah Supreme Court affirmed the State trial court's ruling, admitting the evidence.

Following the unsuccessful direct appeal Martinez also sought habeas relief in the State courts, which was denied by the trial court and the Utah Supreme Court. These proceedings are not in our record, but we are advised of them by the briefs of both parties and there is no contention that Martinez has not exhausted his State remedies.

Martinez then commenced the instant habeas proceedings in the United States District Court for the District of Utah in April, 1970. The case was submitted to the Court by introduction of the line-up photograph, the record of the State Court motion to suppress hearing, and the trial transcript of the robbery case. On consideration of this record the trial court made the findings and conclusions on which the judgment appealed from was based.

The trial court found that Martinez was in custody under the robbery conviction from Salt Lake County, described above; that a motion to suppress was heard prior to the robbery trial and denied without findings or reasons;[2] and that Martinez had presented an alibi defense to the robbery charge. It was found that subsequent to the robbery, Salt Lake City police officers went to the home of Martinez and were met at the door by his wife. The Court found that permission was requested to come into the home and that the officers were allowed to enter by Mrs. Martinez.[3]

1. In addition the trial court found that admissions made by Martinez about the coat during discussions with the officers at his home were improperly received in evidence. This finding is not challenged on appeal, and in the circumstances of the questioning of Martinez, we are satisfied it was correct. See Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311.

2. Orally the Utah trial court stated that there was no denial of rights and no prejudice to the defendant in the proceedings and that the motion to suppress was untimely. Then the Court made a further oral statement for the record with respect to the line-up. Noting the ages, appearance, dress, complexion and hair color of the participants, the Court said that it saw nothing in the line-up prejudicial to the defendant.

At the hearing before the Federal trial court, reference was made by respond-

ent's counsel to the determinations by the State trial court and Supreme Court that the line-up was not prejudicial and that there was consent to the taking of the coat. However, there is no assertion made to us that there was a State Court written finding entitled to deference under 28 U.S.C.A. § 2254. We have noted above the oral statements of the Utah trial court when it denied the motion to suppress, as shown by our record.

3. The officer testifying said he was not certain who came to the door, but it might have been the wife, and that they were invited in. At one point he testified that he asked if "Tony" was home and that the wife, or whoever answered the door, said to come in and that he was home.

Martinez said that from a note on his door and a call to the station, he learned that Officer Westley wanted to see him. He testified that two officers later came

The Court further found that after the officers entered the home Martinez was questioned as to whether he had a coat fitting a particular description, which he acknowledged. No warnings of his constitutional rights were given. It was found that Martinez was asked if he would voluntarily attend a line-up; that Martinez initially indicated he would do so; that the officers also asked him to bring the coat they were interested in, which he repeatedly refused to do; that the officers directed him to do so several times; and that Martinez finally said: "If you want the coat take it." The Court found that the officers then seized the coat and Martinez and left the premises, and that then Martinez indicated an unwillingness to attend the line-up was was immediately arrested.

The Court found further that Martinez was taken to a line-up so that the robbery victim, Mr. Green, could identify the assailant; that Green had previously identified a picture looking like the robber, but had indicated he could not be sure of the identification and would have to see the individual. It was found that the line-up consisted of five persons; that, according to Green, the robber was approximately 5' 7", 140–150 pounds, and Mexican-American or Indian with a mustache; and that Green testified at the trial that no one else in the line-up appeared to be of Mexican or Indian descent or to have a mustache.

The Court found that the other persons in the line-up were substantially taller than Martinez, and that although one other person may have had some resemblance to being Mexican-American, Martinez stood out suggestively and prominently in the line-up as the only person fitting the description that Green had previously given. The Court concluded that the suggestiveness of the line-up constituted a denial of due process.

The Court further found that the coat had been introduced in evidence against Martinez, and was identified by Green as similar to that worn by the robber. It was further held that entrance into the home had not been permitted as a result of voluntary consent; that the coat had been surrendered only by Martinez indicating that the officers could take it after their repeated requests and orders that he bring it; and that there was no knowing and voluntary consent to seizure of the coat by Martinez, who was seventeen years of age. And it was held that admission of the coat in evidence could not be held harmless error beyond a reasonable doubt, and that the use of such evidence violated the Fourth and Fourteenth Amendments.

For reversal appellant argues first that the line-up procedure, considering the totality of the circumstances, was not so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process, relying on Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

There are some factors indicating that the procedures may not have been impermissibly suggestive. Green had a good opportunity to observe the robber and had given a description closely resembling Martinez shortly after the robbery. That night the officer had shown Green some 30 to 50 photographs, but no identification was made. Later large numbers of photographs were shown to him during several visits, without identification being made then or at two line-ups prior to the line-up where Martinez was identified. Finally two or three photographs were brought to him and one was identified. A further line-up was conducted that night where Martinez was identified. Thus, as the State argues, there are several facts supporting the view that the line-up procedures were not unfair, considering the totality of the circumstances.

---

to his door; that he, Martinez, asked if one of them was Westley, and referred to the call and said he had heard Westley wanted to see him; that the officers then walked into the house; and that he was not asked to let them in, and did not say they could not enter.

■ However, the photograph of the line-up also reveals these facts. Among the five men in the line-up only one other had a fairly dark complexion and might be said to have a Mexican-American appearance, but he was several inches taller and noticeably slighter in build than Martinez. In addition, at the State Court hearing on the motion to suppress, Martinez testified that he and the other men in the line-up were asked to and did try on the trench coat in the presence of Green. Since Martinez was noticeably shorter than all the other men, the fit of the coat also tended to focus attention improperly on Martinez.[4] See United States v. Wade, 388 U.S. 218, 233, 87 S.Ct. 1926, 18 L.Ed.2d 1149. There is also an indication in the record that an officer told Green that the suspects, perhaps two of them, would be in this line-up. Such an indication is also a suggestive factor to consider. See United States v. Gambrill, 146 U.S.App. D.C. 72, 449 F.2d 1148, 1151, n. 3. This line-up was about a month after the robbery.

■■ Since the record consists solely of the transcripts and the photograph, we are in as good a position as the trial court to evaluate the evidence. Nevertheless, even where the record is wholly documentary our scope of review is enlarged only to the extent that no regard need be given the opportunity of the trial court to observe witnesses, and in such cases we nevertheless do not disturb the findings unless we have a definite and firm conviction that a mistake has been made. Mid-Continent Casualty Co. v. Everett, 340 F.2d 65, 70 (10th Cir.); Sta-Rite Industries, Inc. v. Johnson, 453 F.2d 1192 (10th Cir.). On this record we feel the findings as to the line-up are supported and not clearly erroneous. In view of the finding, which we accept, that Martinez stood out suggestively and prominently in the line-up as the only person fitting the description that Mr. Green had previously given, we agree that the procedure was unlawful. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Stovall v. Denno, supra; and Belton v. United States, 429 F.2d 933, 936 (10th Cir.).

Secondly, appellant says that the trial court erred in the findings and conclusions that the coat was improperly seized and that its use as evidence was not constitutionally permissible. Appellant argues that there was consent to taking of the coat and that, in any event, its taking was permissible under the plain view doctrine.

■ We have detailed the findings that the officers requested that Martinez take the coat to the station, which he refused to do; that the officers directed him to do so, and that he finally said, "If you want the coat, take it." On examination of the record, we are satisfied that the findings are supported and not clearly erroneous and may not be disturbed. Rule 52(a) F.R.Civ.P.; Mid-Continenet Casualty Co. v. Everett, supra.[5] In view of these findings, we agree that there was no lawful consent to seizure of the coat, since such consent must be unequivocal and freely given, without coercion. See Villano v. United States, 310 F.2d 680, 684 (10th Cir.); and Harless v. Turner, 456 F.2d 1337 (10th Cir.).

■ Appellant also says that the coat was admissible under the plain view doctrine, having been in view of the offi-

4. As discussed below, we agree with the trial court's finding that seizure of the trench coat was unlawful. Thus, by having Martinez wear the coat unlawfully seized, the fairness of the line-up procedure was further impeached. Cf. United States v. Edmons, 432 F.2d 577 (2d Cir.), cert. denied, E. V. Williams Co. v. N.L. R.B., 401 U.S. 937, 91 S.Ct. 928, 28 L.Ed.2d 217.

5. Martinez testified that he told the officer he could not take the coat and that he would wear a sweater, but that the officer said he was taking the coat also. Martinez admitted that he might have said: "If you want to take the coat, you take it."

cers when they were admitted into the home. However, it is clear that the officers knew of the coat when they arrived, and that they questioned Martinez about it and sought to have it located and taken by Martinez to the line-up. In such circumstances, it cannot be said that its discovery was inadvertent and the plain view doctrine cannot apply. Coolidge v. New Hampshire, 403 U.S. 443, 469–471, 91 S.Ct. 2022, 29 L.Ed.2d 564.[6]

 With respect to both the line-up evidence and the coat appellant argues alternatively that even if the proof should have been excluded, its admission was harmless error. We cannot agree. Before a Federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. The coat was introduced as was proof of the identification at the line-up. We conclude that the harmless error test cannot be satisfied here and that this conviction must be held invalid.

██ Third, appellant contends that in any event the trial court erred in ordering immediate release of appellant before an opportunity for retrial was permitted. The order of the trial court provided for immediate release, but included the statement that the State of Utah may take such action as it deems appropriate for retrial. In the circumstances of this case, we agree that the trial court should not have ordered immediate release, and that it should have allowed a reasonable time for retrial before discharging appellant from custody. See e. g., Lesley v. Oklahoma, 407 F.2d 543, 544 (10th Cir.); and see Ridge v. Turner, 444 F.2d 3 (10th Cir.); and Gill v. Turner, 443 F.2d 1064 (10th Cir.). Accordingly, in these circumstances and in order to make clear the right of the State of Utah to retake custody of

appellee for retrial without use of the coat or line-up identification evidence, or the statements of Martinez at the home, the judgment should be modified to provide that the State of Utah may retake custody of appellee for such retrial on the robbery charge, and that if such retrial does not occur within a reasonable time, the trial court will consider an application for a further order for release of appellee from such custody.

As modified the judgment is affirmed.

6. While the trial court's findings and conclusions did not expressly deal with the plain view doctrine, it is clear that under

the detailed findings and conclusions expressed the doctrine could not apply.