Elwood BLACK, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–89–1221.

Court of Criminal Appeals of Oklahoma.

Feb. 1, 1994.

Rehearing Denied March 30, 1994.

Jo–Ann Askins, Oklahoma City, at trial, Lyn Entzeroth, Asst. Appellate Indigent Defender, Norman, on appeal, for appellant.

Emaline Miller, Asst. Dist. Atty., Oklahoma City, at trial, Susan Brimer Loving, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, on appeal, for the State.

## OPINION

LUMPKIN, Presiding Judge:

Appellant Elwood Black, Jr., was tried by a jury in the District Court of Oklahoma County and convicted of First Degree Robbery (21 O.S.1981, §§ 791, 797). The jury recommended Appellant be sentenced to imprisonment for a term of five (5) years. The trial court sentenced accordingly.[1] It is from this judgment and sentence that Appellant appeals. We affirm, and publish because the appeal presents two issues of first impression before this Court.

Victim Georganna Cotton was returning to her job at a Shepherd Mall department store after a late lunch on August 6, 1988. She was carrying a small white clutch purse under her left arm. In the parking lot, she felt an object brush against her left leg. She turned, and saw the object was a small brown car (Alan Wallace, who apparently pled guilty to the charge before this trial, owned a small brown car at the time of the robbery). As the car drove by, a man identified as Appellant reached out through the passenger window, grabbed her purse and pushed her down. Ms. Cotton required medical treatment for asphalt burns. She looked into Appellant's face, not more than 12 to 18 inches away, as the car drove by. She gave a complete description to Oklahoma City police officers, and identified him at the preliminary hearing, picking him out of a three-man "lineup" (Appellant was not seated at counsel table at that time). Appellant was apprehended in Del City at approximately 5:30–6:00 p.m. the day of the robbery, after being arrested on another unrelated robbery. He was not charged for the Del City offense, but was held for Oklahoma City authorities. The length of that detention is the subject of the first proposition of error.

In his first proposition of error, Appellant contends he was illegally detained in violation of state statutes and constitutional provisions. We hold Appellant was detained in violation of the Fourth Amendment to the United States Constitution. We also hold the illegal detention was harmless beyond a reasonable doubt.

Appellant argues both Due Process and Fourth Amendment grounds in urging reversal. He cites violation of state constitutional[2] and statutory[3] provisions as a basis of his due process allegation of error. This Court has held that when a violation of the statutes directing prompt appearance before the magistrate[4] is alleged, the party com-

1. Although Appellant was tried separately for the crime of robbery, the facts indicate he accomplished the deed with the help of another person, who drove the car while Appellant took a purse. The record does not state, but apparently the trial court determined the appropriate punishment stemmed from 21 O.S.1981, § 800, dictating the punishment to be not less than five nor more than fifty years in circumstances where two people act together to commit the crime. Here, however, the instructions to the jury related the punishment as not less than five years—with no 50–year cap—instead of the normal punishment of not less than ten years, under § 798. In any event, Appellant does not raise error in instructions; and here, any error was not fundamental, as he received the minimum punishment.

2. Specifically, Art. II, § 7, guaranteeing individuals the right to Due Process; and Art. II, § 20, guaranteeing every person arrested has the right to be heard by himself and counsel.

3. Specifically, he cites 22 O.S.1981, § 181, which reads: "The defendant must, in all cases, be taken before the magistrate without unnecessary delay."

4. As discussed below, there is a difference between having a probable cause hearing and simply appearing before a magistrate to be advised of rights, appoint an attorney, and otherwise begin the formal criminal process. Thus, in the *statutory* violation, caselaw clearly states the burden to show prejudice is on the *appellant;* while in a constitutional violation, the State must show beyond a reasonable doubt the error did not contribute to the conviction. Here, as Appellant alleges a Fourth Amendment violation, we will use the higher standard in our analysis to determine if error occurred.

plaining must show prejudice. *See Johnson v. State,* 731 P.2d 993, 1001 (Okl.Cr.1987), *cert. denied,* 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987) (Burden on the defendant to show that he was prejudiced by failure to be take before a magistrate immediately. The mere fact that he gave a statement before being taken before a magistrate does not warrant reversal *per se* ); *Dutton v. State,* 674 P.2d 1134, 1138 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984) (Mere fact that a statement was taken from a defendant before he was taken before a magistrate does not warrant reversal; the defendant has the burden of proof to show that the delay caused him prejudice).

In support of his claim Fourth Amendment rights guaranteed by the U.S. Constitution were violated, Appellant cites *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) and *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). *Pugh* states the Constitution requires a probable cause hearing within a reasonable time after a warrantless arrest. However, the case does not set forth remedies if the hearing is not held. *McLaughlin* held the "prompt" time requirement in *Pugh* to be 48 hours. Both are civil cases dealing with violations of constitutional rights.[5] As with *Pugh, McLaughlin* does not indicate a defendant's remedy if the procedure is not followed. However, *Pugh* does make it clear a violation of the prompt probable cause hearing requirement does not automatically necessitate reversal of a criminal conviction:

Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.

*Pugh,* 420 U.S. at 119, 95 S.Ct. at 865. The State uses this language to argue an appellant has no remedy in a criminal case if a prompt hearing is not held. We disagree. As noted in *Pugh,* the rationale behind the requirement for a prompt hearing is to prevent an onerous oppression, a situation where an inmate is unduly influenced by a coercive atmosphere. Faced with a pretrial confinement that may "imperil the suspect's job, interrupt his source of income, and impair his family relationships," *Id.* at 114, 95 S.Ct. at 863, he may be more pliable and more easily coerced. Because of this, an unlawful detention would not be cured by a *Miranda* warning. *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

The Supreme Court in *McLaughlin* arbitrarily determined any delay longer than 48 hours in getting a defendant to a probable cause hearing is unreasonable.[6] However, we find Appellant is incorrect when he claims all evidence must be suppressed because he was not arraigned within 48 hours of arrest. As *Pugh* itself makes clear, a conviction will not be vacated simply because a defendant

---

5. In *Pugh,* the complaint was framed as a class action suit under 42 U.S.C. § 1983, a section of the Civil Rights Act of 1871, which allows a private action for violation of federal rights. *Id.* at 107 n. 5, 95 S.Ct. at 859 n. 5. Likewise, *McLaughlin* was brought as a class action suit under the same provision. *Id.* 500 U.S. at ——, 111 S.Ct. 1661 at 1665, 114 L.Ed.2d at 57. Appellant is citing the cases not in a civil context, but for the authority his Fourth Amendment rights were violated. He implicitly argues that, because his Fourth Amendment rights were violated, the Exclusionary Rule is applicable as a remedy. It is in this context we analyze his complaint.

6. The purpose of a probable cause hearing is to determine whether a detention is legal. Until

such determination is made, one cannot know whether the detention is illegal. Under such reasoning, if it were determined the detention was reasonable, one could argue the determination would have a retroactive effect on evidence gathered before the hearing. As discussion elsewhere indicates, we do not believe this is the proper rationale. We want to make it clear there are two different issues here: whether Appellant was afforded a probable cause hearing, and whether he was brought before a magistrate on an initial appearance and advised of his rights. There is language in *Pugh* that some states combine the two procedures, and the Supreme Court seems to equate the two as one for purposes of discussion. Therefore, we discuss both aspects together.

was held for more than 48 hours without a hearing. On the other hand, *McLaughlin* makes it clear being held longer than 48 hours without a determination can be a Fourth Amendment violation. It would be inconsistent to say the Fourth Amendment applies, yet also hold this to be the one situation in constitutional law where the Exclusionary Rule does not apply to Fourth Amendment violations. Nor do we believe an untimely probable cause hearing retroactively "cures" the time spent without such a hearing, any more than a bad search can later be justified if it proves fruitful. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (That heroin found does not cure wrongful arrest).

■ Rather, we interpret *Pugh* and *McLaughlin* to mean that if authorities in some fashion afford a defendant a probable cause hearing within 48 hours, this short delay is presumptively reasonable—but not automatically so. *See McLaughlin*, 500 U.S. at ——, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. On the other hand, a delay of more than 48 hours is presumptively unreasonable. *Id.* We find the longer the time a defendant sits in jail without some form of probable cause hearing, the more likely the detention will become oppressive to him and the more likely he will be coerced into giving evidence he otherwise would not give, for the reasons stated above.[7] Therefore, we must presume any evidence gathered after the expiration of the 48–hour period is inadmissible, as the burden of proof shifts at that point and the State has made no effort to demonstrate "the existence of a bona fide emergency or other extraordinary circumstance," *Id.*, to rebut

the presumption of unreasonableness in this case.

Appellant complains of several instances of illegally seized evidence. We will address each one in turn.

Appellant was arrested by Del City Police Officer Rennie August 6 as a suspect in an unrelated robbery. At that time, police seized a cap he was wearing. He was not charged in the unrelated robbery (an eyewitness could not identify him, and Alan Wallace confessed to the robbery). On August 9 or 10, the Oklahoma City police put a hold on him. He was transferred to Oklahoma City on August 10. At this point, he had not been taken before a magistrate. A photograph was taken of Appellant after he was transferred to Oklahoma City. On August 11, the victim identified him from a photo line-up. That same morning, he was interviewed. He denied robbing the victim at Shepherd Mall, but admitted being with Alan Wallace all day (Wallace wrote out a statement admitting he drove the car while Appellant took the purse in the mall parking lot). On August 17, the prosecutor filed charges relating to the mall robbery and Appellant was taken before a magistrate.

Based on these facts, the cap was legally seized, as it was seized at the time of arrest. The photograph and statement are presumptively inadmissible: they were not obtained within the 48–hour period, and the prosecution gave no reason why they were not.

■ It is well settled that even constitutional violations need not necessitate reversal if it can be proved they were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d

---

**7.** The State argues on appeal a sort of inverse "inevitable discovery" proposition, saying that they *could* have obtained the evidence within the 48 hours, and therefore the evidence was admissible. That is like saying police *could have* obtained a warrant, and therefore the fact they did not cures any error. We do not deem this an acceptable argument under the circumstances of this case.

We do not deem it necessary to prescribe specific rules governing this probable cause hearing at this time; nor do we need to address how *Pugh* and *McLaughlin* affect 22 O.S.1991, §§ 251–276. These statutes, most of which have been in effect since statehood, essentially codify

the requirement and procedure to be used for a probable cause hearing. We note several prosecutors in the state prepare a document virtually identical to an affidavit for a warrant of arrest, which is submitted to a magistrate, who uses it to make a determination of probable cause. By utilizing this procedure, these districts have resolved the 48–hour requirement mandated by *McLaughlin*. As the Supreme Court has observed, the hearing need not be an adversary one. *Pugh*, 420 U.S. at 120, 95 S.Ct. at 866. Therefore, this procedure, combined with the 22 O.S.1991, §§ 251–276 hearing, afford a criminal defendant an even higher degree of protection than that mandated by the Fourth Amendment.

705 (1967). An analysis of the illegally obtained evidence becomes necessary.

■ The photograph that was taken was used in a pre-trial photo line-up. However, the only mention of the photo line-up during trial came on invitation from Appellant's counsel.[8] As such, it was clearly invited error in the trial. *See Penn v. State,* 684 P.2d 562, 564 (Okl.Cr.1984). Furthermore, despite Appellant's assertions on appeal, the victim's identification of him at preliminary and trial was solid. Although she viewed him only a short time during the robbery (three to five seconds), she was between 12 and 18 inches from his face and looked straight at him. Based on that encounter, she was able to give a very complete description to the police. Furthermore, despite attempts by defense counsel to confuse her, she picked out Appellant from a group of three men at preliminary hearing who were not even sitting at counsel table. Her identification at trial did not waiver; and significantly, Appellant does not raise the issue of witness identification on appeal. Therefore, any error in introducing the photograph was harmless beyond a reasonable doubt. Officer Rennie's testimony concerning how accurate the photograph portrayed appellant at the time of arrest is also harmless beyond a reasonable doubt.

■ Likewise harmless is admission of the statement Appellant gave to Oklahoma City officers. The statement reflects Appellant denied participating in the robbery. The only potentially incriminating portion of the statement was his saying he was with Alan Wallace at the time of the crime. This admission is duplicated by Wallace's statement he drove while Appellant took the purse, and the victim's testimony which firmly placed him there.

This proposition is without merit and reversal is not warranted.

In his second proposition, Appellant, an African–American, urges as error another African–American was improperly removed

8. Appellant spends a great deal of time citing to the preliminary hearing or suppression hearing transcripts. The question here does not deal with a suppression hearing, but whether evidence gained from Appellant's seizure and presented to the jury was harmless error. In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court addressed the question when a constitutional error can be harmless:

> We prefer the approach of this Court in deciding what was harmless error in our recent case of *Fahy v. Connecticut,* 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171]. There we said: 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' *Id.,* at 86–87 [84 S.Ct. at 230]. Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call for reversal. At the same time, however, like the federal harmless-error statute, it emphasizes an intention not to treat as harmless those constitutional errors that 'affect substantial rights' of a party. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy* [*v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)], be conceived of as harmless. Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. *Id.* 386 U.S. at 23–24, 87 S.Ct. at 827–28 (emphasis added). *See also Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *Martinez v. Turner,* 461 F.2d 261 (10th Cir.1972); *Little v. Turner,* 402 F.2d 495 (10th Cir.1968). As a result, the Supreme Court has held that a departure from constitutional procedures need not result in automatic reversal. Where the weight of the rest of the evidence is overwhelming and the prejudicial effect of the inadmissible evidence is insignificant, the error may be viewed as harmless. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In gauging the prejudicial effect of the admission of improper evidence, the Supreme Court has held that a reviewing court's judgment must be based on its own reading of the record and on what seems to have been the probable impact of the inadmissible evidence "on the minds of an average jury." *Id.* at 254, 89 S.Ct. at 1728 (emphasis added). It is in this light we examine the illegally obtained evidence.

We insert the discussion of the photograph in the opinion in an attempt to illustrate the use of a 48–hour limitation. We express no opinion whether the taking of a photograph constitutes evidence illegally obtained from a "seizure."

by a prosecutor's peremptory challenge in violation of *Batson v. Kentucky,* 476 U.S. 79, 98, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

The transcript reflects the following statement by the Court:

> The Court finds that there is no need for a Batson hearing since there have been two jurors of African descent called. The State challenged one, Mrs. Smith, but we still had a remaining juror number one, Mitchell Shannon.

There was no objection by defense counsel.

■ The trial court's statement no hearing was necessary because one black juror was left on is incorrect. *See Alvarado v. United States,* 497 U.S. 543, 544, 110 S.Ct. 2995, 2996, 111 L.Ed.2d 439 (1990) (when complaint otherwise preserved, court of appeals erred in holding that so long as the petit jury chosen satisfied the Sixth Amendment's fair-cross-section concept, it need not inquire into the claim the prosecution struck jurors on purely racial grounds). Other jurisdictions seem to hold that simply because some black jurors were left on the jury does not preclude the possibility of racially discriminatory strikes. *See United States v. Joe,* 928 F.2d 99, 103 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 71, 116 L.Ed.2d 45; *State v. Holloway,* 209 Conn. 636, 553 A.2d 166, 170 (1989), *cert. denied,* 490 U.S. 1071, 109 S.Ct. 2078, 104 L.Ed.2d 643. It is for this reason we reject a similar argument by the State on appeal.

■ We must therefore address whether the error was waived for consideration on appeal by the failure of defense counsel to object. We hold it was.

The application of waiver is implied in *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), where the Supreme Court observed:

> It remains for the trial courts to develop rules, without unnecessary disruption of the jury selection process, to permit legitimate and well-founded objections to the use of peremptory challenges as a mask for race prejudice.

*Id.* at 416, 111 S.Ct. at 1374.[9] *See also McCollum v. Georgia,* 505 U.S. ——, ——, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33, 51 (1992) (In discussing whether the prosecution also has a right to make a *Batson* challenge during jury selection, the Court held: "Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants, must articulate a racially neutral explanation for peremptory challenges.") This, too, indicates an objection must be made contemporaneously.

But the most compelling language indicating a *Batson* challenge can be waived is found in dicta in *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). That case dealt with a black defendant who filed a motion in limine to prohibit a prosecutor from using peremptory strikes to exclude members of his race from the petit jury.[10] The defendant apparently did not renew his motion during trial. On remand for a *Batson* determination, the Georgia appellate court held the claim was procedurally waived on appeal by failing to renew the objection. For reasons not pertinent to this discussion, the Supreme Court held the defendant's pre-trial motion was timely. However, in discussing its rationale, the Court said:

> The requirement that any Batson claim be raised not only before trial, but in the period between the selection of the jurors and the administration of their oaths, is a sensible rule [subject to review of those standards by the Supreme Court].

an objection must be lodged to afford the court an opportunity to address a perceived error.

---

9. *See also Powers,* 499 U.S. at 412, 111 S.Ct. at 1371 (discussion of objections): "If the defendant has no right to object to the prosecutor's improper exclusion of jurors, and if the trial court has no duty to make a prompt inquiry when the defendant shows, by adequate grounds, a likelihood of impropriety in the exercise of a challenge, there arise legitimate doubts that the jury has been chosen by proper means." The construction of the sentence in the Court's discussion of Powers' standing to object indicates

10. The motion was made under *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). However, the Court made it clear the distinction between *Batson* and its predecessor was of no constitutional significance for purposes of the issue before the Court. *See Ford,* 498 U.S. at 420, 111 S.Ct. at 855.

The appropriateness in general of looking to local rules for the law governing the timeliness of a constitutional claim is, of course, clear. In Batson itself, for example, we imposed no new procedural rules and declined either "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges," or to decide when an objection must be timely. 476 U.S., at 99–100, 90 L.Ed.2d 69, 106 S.Ct. 1712 [at 1724–1725]. Instead, we recognized that local practices would indicate the proper deadlines in the contexts of the various procedures used to try criminal cases, and we left it to the trial courts, with their wide "variety of jury selection practices," to implement Batson in the first instance. Id., at 99, n. 24, 90 L.Ed.2d 69, 106 S.Ct. 1712 [at 1724, n. 24]. *Undoubtedly, then, a state court may adopt a general rule that a Batson claim is untimely if it is raised for the first time on appeal, or after the jury is sworn, or before its members are selected.* Id. at 422–23, 111 S.Ct. at 856–57 (emphasis added).

While obviously not in this specific context, this Court has long held objections to jury composition can be waived for appellate review if not properly preserved at trial. *See Ake v. State*, 663 P.2d 1, 4 n. 1 (Okl.Cr.1983), *rev'd on other grounds* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) (defendant could not on appeal complain of juror bias if he waived peremptory challenges below); *Phelps v. State*, 404 P.2d 687, 689 (Okl.Cr. 1965); *Boyd v. State*, 97 Okl.Cr. 331, 263 P.2d 202, 204–05 (1953); *Henderson v. State*, 95 Okl.Cr. 342, 246 P.2d 393, 416 (1952); *Pitman v. State*, 33 Okl.Cr. 165, 242 P. 288, 289 (1926); *Johnson v. State*, 1 Okl.Cr. 321, 97 P. 1059, 1067 (1908). We do not think the ability to advance a *Batson* challenge should be accorded different treatment.

Other jurisdictions also consider the *Batson* issue waived if no objection is lodged at the time, or before the jury is sworn. *United States v. Dobynes*, 905 F.2d 1192, 1196–97 (8th Cir.1990), *cert. denied*, 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167 (1991); *Ex parte State*, 581 So.2d 495, 496 (Ala.1991), *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, 293 (1987).

Accordingly, we hold Appellant here waived his *Batson* challenge by failing to make a timely objection at trial, and review only for fundamental error. *Dobynes*, 905 F.2d at 1196.

This Court has in the past held it is generally the duty of Appellant to preserve the record for this Court to make a meaningful review, except in instances where the death penalty is imposed. *See* discussions in *Van White v. State*, 752 P.2d 814 (Okl.Cr.1988); *Kelly v. State*, 692 P.2d 563 (Okl.Cr.1984). Likewise, the Supreme Court indicates that an appellant still bears the burden of production to show purposeful discrimination. *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721. *Batson* merely made it easier for an appellant to meet this burden. Appellant has failed to meet his burden on the existing record; therefore, there is no merit to the proposition.

Under *Batson*, an appellant must prove three things to make a prima facie showing: (1) he is a member of a cognizable racial group, and the prosecutor has exercised peremptory challenges to remove members of his race; (2) an appellant is entitled to rely on the fact that peremptory challenges constitute a practice that could allow discrimination; (3) an appellant must show these facts *"and any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. at 1722 (emphasis added). The first two are not in dispute.[11] It is the third factor that is at issue.

---

**11.** We recognize there is language in *Powers* holding race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges. *Id.* 499 U.S. at 416, 111 S.Ct. at 1373. However, in light of the facts presented in this case, we need not discuss any effect this language has on the first requirement enunciated in *Batson:* that the defendant and the challenged venireperson be of the same race. We merely observe it appears *Powers* has modified the first requirement for a prima facie showing to require a showing a party has exercised a peremptory challenge to remove a member of the jury solely on the basis of race.

The Court gave some guidance in determining this third factor:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

*Id.* at 96–97, 106 S.Ct. at 1722–1723. It is obvious from the plain language of the passage quoted above the trial court can use these and other factors in determining whether this third factor has been met. We believe this Court has the same power to review the existing record to make that determination. *See Chambers v. State,* 742 S.W.2d 695, 696 (Tex.Crim.App.1988) (court not bound by defense counsel's offer of proof concerning issue); *Rijo v. State,* 721 S.W.2d 562, 564 (Tex.App. Amarillo 1986) (court did not make prosecutor state reason for strike against venire member; appeals court found since the court failed to order a reason, it impliedly found that showing of the first two factors, in concert with other relevant circumstances, failed to raise an inference of discriminatory strikes); *Holloway,* 553 A.2d at 170 ("Despite the trial court's incomplete consideration of the circumstances, we conclude that it was correct in determining that the defendant had failed to establish a prima facie case."); and *Robbins,* 356 S.E.2d at 294 (appellate court will review record of jury at the time of empaneling).

Based on this persuasive authority, and finding the analysis in *Wilson v. State,* 769 S.W.2d 682, 683 (Tex.App. Beaumont 1989) (enunciating a standard of review to be used in reviewing the relevant facts surrounding a *Batson* issue) well reasoned, we now review the record for fundamental error, viewing the pertinent facts in the light most favorable to the trial court's rulings.

The transcript shows there were two women on the venire named "Miss Smith." There is no indication which one was black; and the peremptory challenges were off the record, so there is no way to ascertain if a reason was given or what it was. A check of the jury list reveals "Rita Diane Smith" remained on the petit jury; therefore, the excluded black venireperson must be Melanie Smith.

■ The trial court noted there were two blacks on the venire. It's very difficult to establish a "pattern" based on one strike of a black venire member. The prosecutor's questions to Melanie Smith were nearly identical to questions posed to other venire members. From a prosecutor's standpoint, her answers were not particularly encouraging. The prosecutor noted the evidence might show the victim looked at the robber for only a couple of seconds, and asked Ms. Smith if she thought someone could remember the face. She said it was "possible." However, in response to defense counsel's questions, she said she expected the victim to be emotional, and it was "probably not" possible for such a victim to recognize the person later. She had no prior jury service. Under these circumstances, combined with the total lack of objection by defense counsel who was privy to the off-the-record bench conference at which Ms. Smith was struck, we hold Appellant has not successfully raised an inference the prosecutor used a peremptory to exclude the Ms. Smith from the petit jury because of her race. We therefore find no fundamental error, as we are not left with "a definite and firm conviction that a mistake has been committed." *Hernandez v. New York,* 500 U.S. 352, –––– ––––, 111 S.Ct. 1859, 1871–72, 114 L.Ed.2d 395, 412–13 (1991) (plurality opinion).

Appellant also raises other propositions of error, not of first impression, in support of his appeal. These require only a cursory analysis.

■ In his third proposition, he argues the trial court erred in allowing Georganna

Cotton, the victim, to testify about irrelevant evidence that could inflame the jury. Specifically, he complains of her testimony Appellant had a "very intense, cold stare, looked like he would just as soon run me over with that car." While we find no merit in the State's response the evidence supported robbery by fear—Appellant was charged with robbery by force—we find it is relevant to show the amount of force Appellant was prepared to use to accomplish his goal. Appellant does not argue the probative value of the evidence was substantially outweighed by its prejudicial effect; he merely argues it was not relevant. We find in the light most favorable to the prosecution, the evidence is relevant. 12 O.S.1981, §§ 2401, 2403, 2404. There is no merit to this proposition.

Also without merit is his fourth contention, the trial court erred in allowing the State to indirectly refer to his arrest for the robbery of the Del City Payless Shoe store. Witnesses had been instructed not to mention the previous robbery, and they did not do so. And while one exhibit had the words "Payless Shoes" on it, that exhibit was not admitted. The only hint of another crime is on Exhibit 1A, a Del City Police property form, which shows Appellant was picked up for "armed robbery." However, since Appellant was charged with robbery by force, we find it highly unlikely the jury would have done anything but equate the two as one offense. This observation is strengthened by a note the jury sent out during deliberations, asking why Appellant was picked up. Had they been apprised of the now-complained-of other crime evidence, they would not have asked the question. There is no merit to this proposition.

■ He next alleges the trial court erred in restricting his ability to impeach Officer Rennie, a Del City police officer, by asking him why he was no longer employed there. The record we have is not specific; but apparently the officer was fired, and may have been facing criminal charges for an unspecified offense. The prosecution lodged an oral motion in limine seeking to restrict the questioning of Rennie concerning his employment with the police department.

Appellant did not test the court's ruling on the motion in limine during cross-examination, restricting his question to whether the officer was still employed by the police department; therefore, he has not preserved the issue for appeal before this Court. Appellant's attorney attempted to use the evidence during voir dire, before the court had ruled on the admissibility. In any event, there is no fundamental error. Officer Rennie testified he arrested Appellant, and Appellant was wearing a blue baseball cap. The victim testified her assailant was wearing a blue baseball cap. Under these circumstances, we hold there was no error in refusing to allow the evidence Appellant desired. *See Davis v. Alaska,* 415 U.S. 308, 321, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347 (1974) (Stewart, J., concurring); *United States v. Gambler,* 662 F.2d 834, 840–41 (D.C.Cir. 1981); *United States v. Haro,* 573 F.2d 661, 667–68 (10th Cir.1978), *cert. denied,* 439 U.S. 851, 99 S.Ct. 156, 58 L.Ed.2d 155 (1978). This proposition is without merit.

■ In his sixth proposition of error, Appellant argues State's Exhibit 3 was not properly authenticated and should not have been admitted into evidence. The exhibit was a statement by Alan Wallace, who had participated in the Payless robbery in Del City and who had driven the car while Appellant took the purse. Wallace wrote a short statement saying he had driven the car while Appellant took the purse. However, at trial, he did not remember why he was in the penitentiary; he denied or did not remember knowing Appellant; did not recall writing a statement; and stated outright "I ain't got nothing to say in this whole court deal." In short, Wallace could be considered a hostile witness. On appeal, Appellant argues the document was not properly authenticated, and should not have been admitted.

The relevant portion of the evidence code reads:

A. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims it to be.

B. The following are *illustrative examples* of authentication or identification conforming with the requirements of this Code: [at which point 10 examples are listed].

12 O.S.1981, § 2901 (emphasis added). A plain reading of the provision shows the ten enumerated items in subsection B are merely examples of showing a document is what its proponent purports it to be.

During direct examination of Wallace, the following transpired:

Q (By Ms. Miller [prosecutor]) Mr. Wallace, I am going to hand you what's been marked for identification purposes as State's Exhibit Number 3. Is that your signature on there?

A It looks like it.

Q And did you write that?

A I don't know.

Q That is your writing, isn't it?

A It looks like it.

. . . .

Q Okay. And there's a signature right there, right?

A Yeah.

Q And it says Alan Wallace, doesn't it?

A That's me.

Q And the date is December the 21st, 1988.

A That's what it says.

(Tr. 204–06). Wallace admitted the statement was in his writing and appeared to be his signature. As such, the "matter in question is what its proponent claims it to be": a statement by Wallace implicating Appellant in the robbery. *See New v. State*, 760 P.2d 833, 835 (Okl.Cr.1988); *Fixico v. State*, 735 P.2d 580, 582 (Okl.Cr.1987). There was no error in its admission, and this proposition of error is without merit.

In his seventh and final proposition of error, Appellant claims his statement to Officer Shahan was not admissible because the officer did not properly advise Mr. Black of his rights under *Miranda v. Arizona*. In light of our holding in the first proposition the statement was inadmissible, this complaint is moot.

Accordingly, Appellant's conviction is AFFIRMED.

JOHNSON, V.P.J., and STRUBHAR, J., concur.

CHAPEL, J., dissents.

LANE J., not participating.

CHAPEL, Judge, dissenting:

The opinion in this case takes the theories of "harmless error" and "waiver" to new heights, piling one concept on another in a strained effort to uphold a defective conviction. Either or both of these concepts can be useful tools, but neither should be used to deny any citizen his or her basic constitutional rights. No litigant is entitled to perfection in legal proceedings, but all litigants are entitled to a trial which affords protection of constitutional rights. *Plotner v. State*, 762 P.2d 936 (Okl.Cr.1988) (defendant is entitled to a fair trial, not a perfect one). The opinion in this case goes too far in affirming a conviction which was obtained only after two (2) constitutional violations occurred.

The authorities arrested and held the defendant for ten (10) days before he was taken before a magistrate for a probable cause hearing. I agree with the opinion's fine analysis of the *Pugh* [1] and *McLaughlin* [2] decisions and its conclusion that evidence gathered after forty-eight (48) hours of detention is inadmissible. However, I disagree with the application of harmless error analysis under the circumstances. Instead, where a defendant is held for ten (10) days without a hearing, as here, I would reverse with instructions to dismiss. Moreover, even if harmless error analysis were appropriate, I could not agree that the admission of evidence gathered after forty-eight (48) hours of detention was harmless "beyond a reasonable doubt" as required by *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

---

**1.** *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

**2.** *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

Further compounding the problem in this case is a clear *Batson*[3] violation which the opinion disposes of by concluding the error was waived by defendant's failure to object. I cannot agree. Most constitutional rights can be waived. However, waivers of some constitutional protections can only be waived by a defendant who makes an informed, knowing waiver. In some cases, the knowing and informed requirement may be imputed to a defendant's attorney, who may waive certain constitutional rights by failing to object when there is a strategical reason for doing so. Confrontation would be one example of a constitutional right that *may* be waived by counsel's failure to object at trial.

However, some constitutional rights are so "fundamental" that there is absolutely no strategical reason to "waive" them during trial and which may never be waived by counsel's failure to object unless the defendant knowingly and voluntarily decides to waive these rights him or her self.[4] Examples of these "fundamental" constitutional rights include: the right to counsel, *Chapman v. California*, 386 U.S. 18, 24 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967), citing *Gideon v. Wainright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; the right to an impartial judge, *Chapman*, supra, citing *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749; and the protection against double jeopardy, *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975).

The Sixth Amendment right to a trial by a jury composed of a fair cross-section of the community[5] is another right which I would deem "fundamental" under this category of cases. Therefore, absent an affirmative waiver by the defendant, a violation of these protections is fundamental error and, there-fore, reversible error regardless of whether counsel objected at trial or not. Accordingly, I do not believe we can, or should, infer a waiver of constitutional rights which fall into this category. I would reverse the conviction on the *Batson* violation.

---

3. *Batson v. Kentucky*, 476 U.S. 79, 98, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986).

4. This Court has held that failure to object waives review of all but fundamental error. *Garcia v. State*, 734 P.2d 820, 824 (Okl.Cr.1987). This Court has defined fundamental error as error "which denies the accused a constitutional or statutory right, and which goes to the foundation of the case." *Miller v. State*, 827 P.2d 875, 878 (Okl.Cr.1992), citing *West v. State*, 764 P.2d 528 (Okl.Cr.1988). I interpret this to mean that this type of error would not be fundamental had the defendant knowingly and voluntarily waived the rights him or her self. In other words, this type of error can be waived, but waiver will not be presumed from a silent record, i.e. by a failure to object.

5. *Litteer v. State*, 783 P.2d 971, 972 (Okl.Cr. 1989), *overruled on other grounds*, 862 P.2d 1271 (Okl.Cr.1993), citing *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).